IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **WANDRIA WILLIAMS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 21-cv-02413 |
| | ) |
| **UNITED STATES OF AMERICA AND** | ) |
| **ERICA L. TYLER,** | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING THE GOVERNMENT'S MOTION TO STAY**

Before the Court are two motions: The Government's Motion to Substitute United States for Defendant Erica L. Tyler and to Dismiss Erica L. Tyler (D.E. 8.) and the Government's Motion to Dismiss for Lack of Jurisdiction, or in the Alternative, Motion to Stay, and in the Alternative, Motion for Partial Dismissal (D.E. 9.)  Plaintiff responded on September 24, 2021.  (D.E. 13.)  The Government replied on October 8, 2021.  (D.E. 18.) For the following reasons, the Motion to Stay is GRANTED.

I.  **Background**

The facts are taken from the complaint.

Wandria Williams is a military veteran and former employee of the Memphis VA Medical Center.  (D.E. 1.)  Williams underwent treatment and trauma therapy at the VA clinic where she worked.

1

(Id.) On May 18, 2017, Williams' coworker, Erica Tyler, accessed Williams' medical records without authorization. (Id.) Williams did not know then that Tyler had accessed Williams' records. (Id.) In March and April of 2018, Tyler, acting as Williams' team leader, began bullying and mistreating Williams based on Williams' medical history. (Id.) Tyler also discussed Williams' medical records with their colleagues. (Id.)

On October 25, 2019, Williams requested a Sensitive Patient Access Record ("SPAR") because the VA had recently discovered a separate privacy violation. (Id.) On December 3, 2020, the SPAR showed that Tyler had accessed Williams' records. (Id.) Williams experienced crying spells, anxiety, and insomnia on learning that a coworker had accessed her personal and private diagnoses. (Id.) Williams also began seeing a therapist for Williams' emotional and mental anguish, and Williams experienced marital issues. (Id.)

On February 4, 2020, Tyler emailed Williams about "manners in which an employee may accidentally access a patient's medical chart within the VA Clinic." (Id.) Williams found the email triggering and responded angrily to Tyler. (Id.) Williams was reprimanded for her response. (Id.) Williams sought corrective action against Tyler without success. (Id.) Williams then asked to be relocated to a job site away from Tyler. (Id.) The VA denied the request. (Id.) In April 2021, Williams quit her job

2

to "escape the work environment at the Memphis VA Medical Clinic." (Id.)

On June 16, 2021, Williams filed the present action. She sues the United States and Tyler under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, et seq., and the Privacy Act, 5 U.S.C. §§ 552a, et seq., and asserts state law claims of negligence, negligence per se, invasion of privacy, negligent and intentional infliction of emotional distress, and violations of the Patient's Privacy Protection Act ("PPPA"), Tenn.Code Ann. §§ 68-11-1501, et seq. (Id.) Williams seeks damages based on emotional distress and punitive damages.

The Government filed the two present motions on August 19, 2021. (D.E. 8; D.E. 9.) The Government first moves to dismiss Tyler as a party and deem any claims against her to be claims against the United States. (D.E. 8.) In the Motion to Dismiss, the Government seeks, inter alia, dismissal for lack of subject matter jurisdiction, arguing that the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. §§ 8101, et seq., is Williams' exclusive remedy. (D.E. 9.) In the alternative, the Government asks the Court to stay the case to allow the Secretary of Labor to determine whether Williams' claims are covered by FECA. (Id.)

## II. Jurisdiction and Standard of Review

The Court has federal question jurisdiction. Under 28 U.S.C. § 1331, district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." Williams asserts claims under the FTCA and the Privacy Act. The Court has supplemental jurisdiction over Williams' state law claims pursuant to 28 U.S.C. § 1367(a).

Rule 12(b)(1) governs challenges to a court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Subject-matter jurisdiction turns on whether a federal court has 'statutory or constitutional *power* to adjudicate the case' before it." Herr v. United States Forest Service, 803 F.3d 809, 813 (6th Cir. 2015) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis in original)). A federal court must dismiss a lawsuit if it lacks subject matter jurisdiction. Herr, 803 F.3d at 813. When a defendant challenges subject matter jurisdiction through a motion to dismiss, the plaintiff bears the burden of establishing jurisdiction. Clark v. Stone, 998 F.3d 287, 294 (6th Cir. 2021) (citing Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990)).

**III. Analysis**

FECA is the federal government's workers' compensation scheme. Williamson v. United States, 862 F.3d 577, 581 (6th Cir. 2017) (citing Wright v. United States, 717 F.2d 254, 256 (6th Cir. 1983)). FECA provides compensation for "the disability or death of an employee resulting from personal injury sustained while in the performance of his duty[.]" 5 U.S.C. § 8102(a). FECA is the "exclusive remedy for *all* damages arising out of a discrete personal injury which kills or disables an employee." Saltsman v. United States, 104 F.3d 787, 790 (6th Cir. 1997) (emphasis in original); see Williamson, 862 F.3d at 580 ("FECA creates a quid pro quo—federal employees receive compensation for work-related injuries without having to prove fault, and in exchange, they lose the right to sue their government employer in tort.").

Federal courts lack subject matter jurisdiction to consider an action that is covered by FECA. McCall v. United States, 901 F.2d 548, 551-52 (6th Cir. 1990); Wright, 717 F.2d at 257. If there is a "substantial question" about FECA coverage, federal courts must abstain until the Secretary of Labor determines whether FECA covers the action. Heilman v. United States, 731 F.2d 1104, 1110 (3rd Cir. 1984). There is a substantial question unless it is certain that the Secretary would find no FECA

coverage. Id.; White v. United States, 143 F.3d 232, 234 (5th Cir. 1998).

There is a substantial question about FECA coverage when a plaintiff's alleged injury "arise[s] out of the special zone of danger created by an obligation or condition of employment." Wright, 717 F.2d at 257. To determine whether the injury arises out of the special zone of danger, courts look for a causal relationship between the employee's injury and the nature of her employment. See id. at 258; Wallace v. United States, 669 F.2d 947, 954 (4th Cir. 1982).

The Government argues that there is a causal connection between Williams' injuries and her employment at the VA. It relies on two cases, Wright and Smith v. Nicholson, 516 F.Supp.2d 832 (S.D. Texas 2007). In Wright, the Sixth Circuit found no substantial question about a VA employee's FTCA claim. Wright, 717 F.2d at 258. Wright alleged that the VA hospital's negligent operation of a respirator damaged her trachea, vocal cords, and pharynx. Id. at 256. Wright was treated at the VA hospital because she became acutely ill at work. Id. at 255. Although Wright's injuries occurred at the hospital where she worked, the Court found no causal connection between her employment and her injuries. Id. at 258. That Wright became sick and was subsequently treated at her place of work was a coincidence, and not related to her employment. Id. at 258.

6

In Smith, the Court found that a substantial question about whether FECA coverage deprived the Court of jurisdiction. Smith, 516 F.Supp.2d at 841. Smith, also a VA employee, left work to receive emergency medical care at the VA hospital. Id. at 835. A few days later, he discovered that hospital employees had disclosed his records to coworkers without authorization. Id. Smith alleged violations of the Privacy Act, claiming that the disclosures led to malicious workplace rumors, injuring him physically and mentally. Id. Citing Wright, the Court noted that because Smith's injury occurred at his workplace did not mean there was a substantial question under FECA. Id. at 840. The Court distinguished the case from Wright because "Smith also alleged that he suffered personal injury at his job, when he returned to work, because his coworkers spread rumors about the information contained in his medical records." Id. at 840. Because the invasion of privacy led to injuries at Smith's job, there was a causal connection between his employment and his injuries. See id. at 841.

The Court finds the analysis in Smith persuasive. Williams' claims are closer to those in Smith than those in Wright. Like Smith and Wright, Williams is a VA employee whose alleged injuries coincidentally occurred at work. Like Smith, and unlike Wright, Williams' alleged injuries are related to her workplace. In the complaint, Williams asserts that she "suffered from severe

7

emotional trauma as a direct and proximate result of her co-worker obtaining and/or sharing with other co-workers her medical records, including her treatment and confidential medical diagnoses." (D.E. 1.) Williams also alleges that, "as a result of such disclosures, [she] suffered bullying and mistreatment at the hands of Ms. Tyler," who was her supervisor at the time. (Id.) An email from Tyler triggered Williams, which caused Williams to be reprimanded by management. (Id.) She eventually quit her job because of her "severe mental anguish in light of [the] privacy violation." The unauthorized access of Williams' records led to harms at her workplace.

    Williams attempts to distinguish her case from Smith. She argues that her injuries did not originate from the performance of her duties as an employee, and thus do not present a substantial question about FECA coverage. (D.E. 13.) The origin of the injuries is not determinative. In Smith, the Court did not focus on where the alleged injuries originated, but on whether there was a causal connection between the injuries and Smith's employment. The Smith Court found a causal connection because the unauthorized access of Smith's records led to a workplace injury, even if the initial access of Smith's information did not originate in the scope of his duties. Smith 516 F.Supp.2d at 841. Williams' alleged workplace injuries are

a direct result of the privacy breach. There is a causal connection between her injuries and her employment.

Williams argues that her injuries are not "exclusively related" to injuries sustained while performing her duties. (D.E. 13.) Neither Wright nor Smith states that an employee's injuries must be exclusively related to her workplace duties. The question is whether there is a causal connection between Williams' injuries and her employment. See Wright, 717 F.2d at 258. Although the initial unauthorized access to Williams' records may have been unrelated to her status as a VA employee, the subsequent injuries she alleges, like emotional trauma because a coworker shared Williams' sensitive medical information, are causally connected to her employment.

Williams argues that, because she did not discover the privacy breach until much later, her injuries merely coincided with her job and were not causally connected to it. (D.E. 13.) In her complaint, Williams alleges that her injuries came as a "direct and proximate result of her co-worker obtaining and/or sharing with other co-workers her medical records." (D.E. 1.) She claims that, when she eventually did find out about the breach, she was "deeply disturbed by the news that a co-worker had accessed her medical chart." (Id.) The breach eventually led to her being reprimanded at work and quitting her job. Williams suffered emotional injuries specifically because a

9

coworker accessed her records.  The causal connection creates a substantial question about FECA coverage, regardless of whether Williams knew about the disclosure when it occurred.

The allegations in Williams' complaint raise a substantial question about FECA coverage.  The Court must stay the case pending the Secretary of Labor's determination about FECA coverage.

## IV.  Conclusion

For the foregoing reasons, the Government's Motion to Stay the Case is GRANTED.  The case is closed administratively pending the Secretary of Labor's determination.

So ordered this 3d day of November, 2021.

    */s/ Samuel H. Mays, Jr*
    SAMUEL H. MAYS, JR.
    UNITED STATES DISTRICT JUDGE